UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

K.S., individually and as a parent and next friend
of N.S., a child with a disability,

      *Plaintiffs*                              **COMPLAINT**

      -against-                             **CASE NO.**

Strongsville City School District,

      *Defendant.*

_____

      K.S., individually and as parent and next friend of N.S., a child with a disability, by and through her attorneys, Law Office of Michelle K. McGuire, for her complaint hereby alleges:

1. This is an action brought pursuant to the civil action provision of the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1400.
2. Plaintiff K.S. resides in the County of Cuyahoga, State of Ohio.
3. Plaintiff N.S. is a child with a disability as defined by IDEA, 20 U.S.C. § 1401(3)(A).
4. K.S. is the parent of N.S. as defined by IDEA, 20 U.S.C. § 1401(23).
5. Defendant, Strongsville City School District, is a local educational agency as defined by IDEA, 20 U.S.C. § 1401(19), and, as such, is obligated to provide educational and related programs and services to its students in compliance with the applicable federal and state statutes, regulations, and the U.S. Constitution, and is subject to the requirements of 20 U.S.C. §1400 *et seq.,* and the regulations promulgated thereunder.

**JURISDICTION AND VENUE**

6. Jurisdiction is predicated upon 28 U.S.C. § 1331, which provides the district courts with original jurisdiction over all civil actions arising under the laws of the United States, and upon the provisions of IDEA, 20 U.S.C. § 1400.

7. Venue is predicated upon 28 U.S.C. § 1391(b)(1) based upon the residence of the defendant, and upon 28 U.S.C. § 1391(b)(2) based upon the location of the subject matter of this action.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

8. By Request dated December 16, 2011, the parents requested an impartial due process hearing, alleging a denial of a free and appropriate public education for the 2009-10 and 2010-11 school years.
9. The Ohio Department of Education appointed Harry Taich, Esq. as impartial hearing officer (IHO).
10. A disclosure conference was held on January 30, 2012 and a full hearing was held on February 6, 7, 9, 10, 21, 22, March 7, 8, 19, 20, 22, and 30, 2012.
11. IHO Taich issued his decision on May 23, 2012, finding that the Parent failed to establish by a preponderance of the evidence that the District denied Student a free appropriate public education during the 2009-2010 school year from December 19, 2009 forward, and for the 2011-2012 school year; that the Parents failed to meet their burden of proof with regard to all of the issues of this case; that there were no procedural violations by the District involved in the development of Student's 2009-2010, 2010-2011, 2011-2012 IEP's and/or placement decisions and/or any other issues which rose to the level of denying Student's Parents meaningful participation in the decision making process and/or that were significant enough to result in a denial of a FAPE to the Student and/or that caused a deprivation of an educational benefit. IHO Dec. pg. 54
12. On or around June 19, 2012, Plaintiff initiated an appeal to the Ohio Department of Education State Level Review Office.
13. Robert L. Mues, Esq. was appointed the State Level Review Officer (SLRO).
14. On October 18, 2012, SLRO Mues rendered a decision, wherein he stated he had reviewed the entire record of the proceedings, the IHO's applications of the law, and based upon that review, found no errors in the decision of the IHO and affirmed the IHO's decision.

15. Plaintiffs present the within appeal.

## FACTUAL BACKGROUND

16. N.S. was born on September 19, 2002 and has been diagnosed with PDD, NOS/ASD and ADHD, Combined Type. He suffers from a congenital left auricle anomaly evidenced by a physical deformity of the left ear with "moderate mixed hearing loss" in the left ear. He also demonstrates insufficient lip closure that results in difficulty with being understood. N.S. has inadequate vocal volume, which also makes his speech unintelligible.
17. N.S. was found eligible as a preschooler with a disability at the age of three, and was provided an IEP by the Strongsville City School District.
18. During his pre-school years, N.S. was the recipient of the Ohio Autism Scholarship and attended the Middleburgh Early Education Center ("MEEC") from about 2006 until his Kindergarten year. Tr. 1649
19. The District evaluated N.S. in 2008 for his school-age evaluation. Ex. 34
20. The IEP team, along with N.S.'s parents met to write a school-age IEP for N.S.'s Kindergarten year. The IEP team determined that N.S. would receive related services of speech and occupational therapy and that he would be placed in the regular education setting and the parents agreed.
21. N.S. attended Whitney Elementary for his Kindergarten year – the 2008-2009 school year. Tr 412
22. N.S. made adequate progress in the regular education classroom during his Kindergarten year without any adverse behaviors that required removing him from the classroom or his peers. Tr. 1912
23. On May 19, 2009, the IEP team met to develop the 2009-10 IEP. The IEP team consisted of N.S.' general education teacher Mrs. Amari, speech-language pathologist Dell-Ann Lewis, occupational therapist Kelly Ryba, Intervention Specialist Susan Baraga and the Staseks. Tr. 428.
24. In 2009, N.S. began first grade in Strongsville in the regular education setting with an IEP that did not provide appropriate supports to address his needs. Ex. 42
25. Immediately at the beginning of the 2009-2010 school year, N.S. began to demonstrate aggressive behaviors from the lack of specifically designed instruction, peer bullying,

lack of proper supports, and the lack of a behavior intervention plan to support his success in the regular education setting. Ex. 42

26. N.S. had numerous incidents of spitting, hitting teachers, throwing objects, swearing, and destroying school property. PEx. A, Tr, 243, 247, 457.

27. Additionally, there were incidents of elopement during the 2009-10 school year. N.S. eloped from the building on four occasions into the neighborhood. Tr. 2052, 279-282

28. The District responded to the increasing behaviors of N.S. by secluding him in the "glass house," which was determined to be a breezeway in the building. PExs. K-N, Tr. 266

29. The parents had no knowledge that their son was spending time in the glass house. Tr. 1678

30. The use of the glass house is not provided for on the IEP nor is it noted anywhere in N.S.' IEP. Ex. 42

31. N.S.'s IEP provided for goals to be completed in the general education setting, but were in fact being completed in the glasshouse. There was no data distinguishing between the progress made in the general education setting versus the glass house. Exs. 86, 130; Tr. 685, 2097-98

32. Parents had no knowledge of the severity of the impact N.S.'s behaviors were having on his education in the general education setting during the 2009-2010 school year. Tr. 1680-1682, 1881

33. Prompted by a continued escalation in aggressive behaviors, the school psychologist conducted an FBA and discussed the results in November 2009. Ex. 59

34. The IEP team utilized the results of the FBA to add a behavior goal (Goal #8) to the IEP in November 2009. Ex. 46, Tr. 2039

35. Despite the addition of Goal #8 to the IEP and the continued seclusion, N.S.'s behaviors continued to escalate both in frequency, duration and content. Tr. 274, 458, 985, 2051

36. There was never a behavior intervention plan developed for N.S.

37. Contemporaneously, and on several occasions, K.S. brought her concerns to the Defendant that her son, N.S., was being bullied. Tr. 1662

38. The District refused to address any bullying concerns with K.S. until March 2010. The building principal, Kathleen Urmstron, never notified K.S. that she was at all looking into her concerns of bullying and never discussed any confirmations of the bullying N.S.

suffered. Tr. 545

39. Finally, at an IEP meeting on April 14, 2010, the team decided to proceed with a second FBA. Tr. 985-987

40. The District's Director of Pupil Services, Denise Abboud, conducted an FBA during the week of April 27, 2010. Tr. 1965, Ex. 86

41. The results of the FBA and a proposed IEP Amendment were presented to K.S. at an IEP meeting on May 7, 2010. Ex. 47

42. The attendees of the May 7, 2010 IEP meeting were: Director of Pupil Services, Parent and the Intervention Specialist (Ms. Baragra). There was no general education teacher present at the IEP meeting, nor was there an excusal of her attendance by the Parent.

43. The May 7, 2010 IEP Amendment only sufficed to reiterate accommodations that N.S. had been receiving the entire year as means to address his behaviors. Ex. 47

44. The May 7, 2010 IEP Amendment did not provide anything new to address N.S.'s behaviors. Tr. 1029, 601

45. Specifically, the May 7, 2010 IEP Amendment provided for the continued seclusion of N.S. in the glass house. Ex. 47

46. In June 2010, the District issued a Prior Written Notice indicating that N.S.' behaviors interfered with his education during the 2009-2010 school year. Ex. 17, Tr. 1315.

47. The District did nothing to address N.S.'s interfering behaviors and yet, the IHO concluded that the District was proactive. IHO Dec.

48. N.S. was served on the Autism Scholarship (Parent Choice Program) for the 2010-11 school year. N.S. did not attend a Strongsville school during the 2010-11 school year.

49. In April 2011, the District initiated and completed N.S.' three year reevaluation while he was attending a private placement. Ex. 39, Tr. 1748

50. In April of 2011, Strongsville conducted an annual review for N.S.'s IEP and changed N.S.'s placement without his parent's consent. Tr. 1757

51. The 2011-12 IEP fundamentally changed N.S.' Least Restrictive Environment from general education (80% of the time with typical peers) to a room outside of the general education (resource room referred to as the Special Class Learning Center). Ex. 35, Tr. 1320

52. The District did not provide prior notice of changing his placement, nor did the District follow proper procedures in seeking parental consent to change N.S's placement. Tr. 1320
53. The 2011-2012 IEP focused on behavior and did not adhere to the Ohio Content Standards for Academics. Ex 53, Tr. 1335
54. The 2011-12 IEP does not provide N.S. with the ability to access the general education curriculum. Ex 53
55. K.S. obtained Independent Educational Evaluations during the summer/fall of 2011 in the following areas: Neuropsychological Evaluation by Dr. Christine Barry (Ex. 101), Speech and Language Evaluation by Dr. Anjali Rao (Ex. 96). These evaluations demonstrated that N.S. could participate in the general educational classroom setting with the proper supports. Tr. 2350
56. N.S. was served on the Autism Scholarship Program ("ASP") until August 2011.
57. In August 2011, K.S. informed the District that she had withdrawn N.S. from the ASP and he would be attending school in the District. Tr. 1764
58. In August 2011, Mrs. Stasek realized that the District had changed N.S.'s placement in the April 2011 IEP and she brought her concerns to the Special Education Director. Tr.1759-1760, 1764-65
59. In August 2011, N.S. returned to the District for his education and attended Surrarrer Elementary on the first day of school. He was placed in Mr. Frederick's classroom, which is a "moderate to intensive" room for students who have behavioral issues, limited communication, modified instruction and is considered the most severe non-physical disabled room. Tr. 2292-93
60. The District retained an outside party to conduct an FBA in September 2011. The results of the FBA also indicated that N.S. is able to handle the general education curriculum in the general education setting. Ex. 61
61. The 2011-2012 IEP was amended on October 7, 2011 to provide N.S. with an additional 30 minutes a week in the general education classroom. Specifically, N.S.' speech services were changed: indirect speech therapy changed from 30 minutes a month to 120 minutes in the general education classroom setting and N.S.' direct instruction and guided practice

    in behavioral coping strategies and replacement skills was decreased from 240 minutes to 180 minutes daily in the SCLC. Ex. 56, Tr. 2467

62. There was no plan developed or implemented by the IEP team to transition N.S. from the resource room to the general education classroom despite the recommendations of all the reports, evaluations and observations. Tr. 1356, 2305-2307

63. Mrs. Stasek attending several meetings with the District in the Fall of 2011 to address her concerns with the team in the fall of 2011. The team was unable to reach a resolution.

64. Mrs. Stasek provided the District with the required notice of privately placing N.S. at Monarch.

65. In November 2011, N.S. began attending Monarch School. Tr. 1414

66. N.S. progressed with his academics without any interfering behaviors. Tr. 1460

67. N.S. was engaging with his peers. Tr. 1491-1492

68. Monarch identified and began working with N.S. to address issues that were not identified by the District. Tr. 1417

69. Monarch School is appropriate for educating N.S.

## FIRST CAUSE OF ACTION

70. Plaintiffs repeat and reallege paragraphs 1 through 69 as if more fully set forth herein.

71. The IHO erred in his Decision by finding that there was not a denial of FAPE during the 2009-10 and 2011-12 school years.

72. The actions by defendant STRONGSVILLE SCHOOL DISTRICT and the decision of the IHO, as set forth above, interfered with and denied the plaintiff his right to a free appropriate public education (FAPE) under the IDEA, 28 U.S.C. § 1400 *et seq.* and the regulations promulgated under state and federal law.

73. Plaintiff requests that the Court annul the decision IHO and grant the relief requested in the hearing request.

## SECOND CAUSE OF ACTION

74. Plaintiffs repeat and reallege paragraphs 1 through 73 as if more fully set forth herein.

75. The SLRO erred in affirming the IHO's decision

76. It does not appear that the SLRO complied with OAC 3301-51-51-05(K)(14)(b)(iii). It appears that the SLRO simply rubber-stamped the IHO's decision.

77. The actions by defendant STRONGSVILLE SCHOOL DISTRICT and the decisions of the SLRO, as set forth above, interfered with and denied the plaintiff his right to a free appropriate public education (FAPE) under the IDEA, 28 U.S.C. § 1400 *et seq.* and the regulations promulgated under state and federal law.
78. Plaintiff requests that the Court annul the decision of the SLRO, and grant the relief requested in the hearing request.

WHEREFORE, plaintiffs respectfully request that this Court:

(1) Assume jurisdiction over this action;

(2) Issue an order annulling the IHO's decision of May 23, 2012;

(3) Issue an order annulling the SLRO's decision of October 18, 2012;

(4) Issue a Finding that Defendant denied N.S. free appropriate public education for the school years of 2009-10 and 2011-12.

(5) Issue an order granting the relief requested in the hearing request of December 16, 2011.

Respectfully submitted,

/s
Michelle K. McGuire 0076553
PO Box 81804
Cleveland, Ohio 44181
Phone: (440) 396-7844
Fax: (440) 398-0537
Michelle.attorney@gmail.com


/s
Andrew K. Cuddy 514621
145 East Genesee Street
Auburn, New York 13021
Phone: 716-868-9103
Fax: 718-569-6466
Email: akcuddy132@aol.com

*Attorneys for Plaintiffs*