## IN THE UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | |
|---|---|
| K.S., *et al.* <br><br> **Plaintiffs-Appellants,** <br><br> **vs.** <br><br> **Strongsville City School District** <br><br> **Defendant-Appellee.** | **CASE NO: 1:13CV00091** <br><br> **JUDGE:  DONALD C NUGENT** <br><br><br> <u>**MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD**</u> |

Pursuant to 20 U.S.C. § 1415(i)(2), Plaintiffs-Appellants, K.S. *et al.,* (hereinafter referred to as "N.S.") hereby moves this Court for an order granting it judgment on the administrative record along with the relief requested in the Plaintiffs-Appellants' Complaint.

A memorandum in support of this Motion is attached hereto and incorporated herein.

Respectfully submitted,

_____
Michelle K. McGuire 0076553
PO Box 81804
Cleveland, Ohio 44181
(440) 396-7844
Michelle.attorney@gmail.com
Attorney for Plaintiffs

## <u>CERTIFICATION</u>

I, Michelle K. McGuire, certify:

1. This case was assigned to the standard case management track on March 21, 2013.

2. Local Rule 7.1(g) provides that memoranda relating to dispositive motions in standard cases shall not exceed twenty (20) pages. Plaintiffs' Memorandum in Support of its Motion for Judgment on the Administrative Record in the above-captioned case does not exceed this page limitation.

<u>/s/Michelle K. McGuire</u>

Page 2 of 22

## STATEMENT OF ISSUES TO BE DECIDED

1. Did the Strongsville City School District provide N.S. a free and appropriate public education ("FAPE") for the 2009-10 and 2011-12 school years.

2. Are the Appellants entitled to the relief requested.

## SUMMARY OF ARGUMENTS PRESENTED

The administrative record supports that the Strongsville City School District denied N.S. his right to a free and appropriate public education. The Plaintiffs are entitled to judgment as a matter of law because the final decisions of IHO Taich, and SLRO Mues were not based upon consideration of relevant factors and so are arbitrary and capricious. Both IHO Taich and SLRO Mues abused their discretion which is not in accordance with law and it was taken without observance of procedure required by law.

This Court should not give deference to the IHO and SLRO's factual errors, speculations and personal opinions. The testimony of the witnesses and the evidence in the administrative records clearly show that Strongsville City Schools denied N.S. his right to a FAPE for the 2009-10 and 2011-12 school years. The Plaintiffs ask that this court find that the parents met their burden of proof and that they are entitled to the relief requested. The Parents have demonstrated that Monarch is appropriate in meeting N.S.'s unique needs.

Accordingly, this Court must defer to the entire administrative record and find that the Impartial Hearing Officer ("IHO") and State Level Review Officer ("SLRO") abused their discretion. The Plaintiffs ask this Court to set aside the decision of SLRO Mues and grant the relief requested.

## MEMORANDUM IN SUPPORT

### I. INTRODUCTION

Plaintiffs initiated an administrative due process hearing request on or about December 16, 2011 under Section 1415(f)(1) of the Individuals with Disabilities Improvement Act ("IDEIA"), 20 U.S.C. § 1400 *et seq*., O.R.C. §119, O.R.C. §3323 *et seq.*, O.A.C. §3301-51 *et seq.*   Harry Taich was appointed by the Ohio Department of Education, Officer of Exceptional Children as the Impartial Hearing Officer (IHO) to hear the due process matter which was assigned Case No. SE2645-2011.   The due process hearings were held on February 6, 7, 9, 10, 21, 22, and March 7, 19, 20, 22 and 30[th,] 2012.   IHO Taich rendered his final decision in the matter of SE2645-2011 on May 23, 2012.   IHO Taich erroneously determined that the parents failed to establish by a preponderance of the evidence that the District denied N.S. a FAPE for the 2009-10 and 2011-12 school years and denied the parents' request for tuition reimbursement.

Plaintiffs timely appealed the decision to the Ohio Department of Education (ODE) as required by IDEIA.  The ODE appointed a State Level Review Officer (SLRO) Robert Mues to conduct an independent review of the proceedings.   The SLRO then must "conduct an impartial review of the findings and decision appealed." Ohio Admin. Code § 3301-51-05(K)(14)(b)(ii). Specifically, the SLRO must examine "the entire hearing record," take additional evidence if necessary, provide an opportunity for argument, and make "an independent decision on completion of the review." Ohio Admin. Code § 3301-51-05(K)(14)(b)(iii). The decision of the SLRO is final unless an appeal is brought to a state or federal district court. See Ohio Admin. Code §§ 3301-51-05(K)(14)(d) & (K)(17).

On October 18, 2012, SLRO Mues issued a 13-page decision based on the entire record of 2536 pages of transcript and thousands of pages of exhibits before him that found the following:

"With respect to the findings of fact, the law requires that the SLRO defer to the IHO unless the IHO's findings are clearly erroneous.  Contrary to the Appellants' allegation, this SLRO believes that the IHO's factual findings were all supported by specific citations to the testimony and/or exhibits presented at the hearing.  Having reviewed these citations, this SLRO finds nothing clearly erroneously (sic) in the IHO's findings.  After independently reviewing the record and giving the appropriate amount of deference to the IHO's findings, I reject Appellants' seven assignments of error and affirm the IHO's decision in its entirety."

The Strongsville City School District did not offer N.S. an appropriate IEP for the 2009-10 and 2011-12 school years.  This was indeed evidenced by the Strongsville staff removing N.S. from his least restrictive environment in the general education classroom to a "glass house" a doorway secluding him from his peers. This removal occurred unilaterally without an IEP meeting, without the parent input and without consent from the parents.   As Strongsville denied N.S. a FAPE, the Appellants are entitled to reimbursement for N.S.'s tuition at Monarch. Monarch is an appropriate placement where N.S. made tremendous progress in all areas of need.

Therefore, the Appellants respectfully requests that the decisions of the IHO and SLRO be vacated and set aside in their entirety.

## II. STATEMENT OF FACTS

N.S. has been diagnosed with PDD, NOS/ASD and ADHD, Combined Type, which has led to significant deficiencies in the areas of communication, social-emotional/behavioral, learning and gross/fine motor skill issues.[1] N.S. has been found eligible for special education services under the IDEA by the Strongsville City School District.

In 2009 N.S. attended first grade at Whitney Elementary School, part of the Strongsville City School District. N.S. was educated during the 2009-2010 school year with special designed instruction pursuant to an IEP, which was developed on June 2, 2009 and effective through June 1, 2010.  This 2009-2010 IEP placed N.S. primarily in the general education setting, with out of

---

[1] For brevity N.S.'s historical background is detailed in the Parents' Closing brief ("PCB") on page 5 and Parents Appellant Brief ("PAB") on page 2

classroom speech services, but did not provide the appropriate supports to ensure that N.S. could be successful in such a setting.  Immediately at the beginning of the school year, N.S. began to demonstrate aggressive behaviors that impeded his learning and the learning of others. N.S.' IEP team did not appropriately address N.S.' escalating behaviors during the entire school year. Further, N.S.' 2009-2010 IEP was not implemented as it was written and any progress reported on that IEP was inaccurate and misleading because the IEP was not revised to accurately reflect how they were implementing N.S.'s IEP.  The reports sent home all reported N.S. was in the general education setting receiving outstanding remarks and progress.  It was not until the due process hearing testimony that the parents learned that N.S. was actually being educated in a glass doorway because his behaviors were so severely aggressive that he was not able to cope being educated in a classroom. This glass doorway is a change in placement which denies N.S. FAPE.

Following the difficult 2009-2010 school year at Whitney, Mr. and Mrs. Stasek utilized the Ohio Autism Scholarship for the 2010-2011 school year.  The 2010-2011 school year was an eye-opening year for N.S.'s parents as they learned for the first time that N.S. was having extreme difficulty functioning behaviorally in the classroom without the proper supports. By the end of this school year, N.S.' educators at BIIO were able to determine and implement the appropriate supports for N.S. to be successful behaviorally at school.[2]

In April of 2011, while attending a scholarship school, Strongsville conducted an annual review for N.S.'s IEP.  Unbeknownst to the parents, the District changed N.S.'s placement without his parent's consent for a second time. The last IEP written placed N.S. in the general education setting with typical peers.  The April 2011 IEP offers N.S. a placement in a self-

---

[2] The 2010-11 school year is not being litigated.  The parents utilized a state scholarship to enroll N.S. in a private school.  This program was successful in addressing N.S.'s behaviors so the parents returned N.S. to the public school in the fall of 2011.

contained resource room without typical peers. The District did not provide prior notice of changing his placement, nor did the District follow proper procedures in seeking parental consent to change N.S's placement. (Tr. 1321-1323). Mrs. Stasek did not clearly understand what had taken place when she signed the IEP in April 2011 until she returned N.S. to Strongsville in August of 2011.[3]   The IEP was not appropriate for N.S.

The District failed to create and implement a transition plan in the fall of 2011. The 2011-12 IEP failed to provide N.S. the proper supports and services, and failed to adhere to the Ohio Academic Standards for students with IEPs. After many meetings and an amendment to the IEP that failed to address any of the violations of the IDEIA, in November 2011, the Parents provided the District with the required notice of unilaterally placing N.S. at Monarch School for Children with Autism and are seeking reimbursement for educational expenses.

In November 2011, N.S. began attending Monarch School. N.S. is currently enrolled and attending Monarch School for Autism.

### III. STANDARD OF REVIEW

**This Court Must Give Due Weight to the Preponderance of the evidence contained in the complete record of the Administrative Hearings.**

When reviewing the administrative findings in an IDEA action, the district court sits as an appellate body and shall receive the entire record of the administrative proceedings, shall hear additional evidence at the request of a party, and basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate. 20 U.S.C.§ 1415(i)(2)(B). In conducting this review, the court applies a modified *de novo* standard which requires it "to make findings of fact based on a preponderance of the evidence contained in the *complete*

---

[3] The parent **must sign** to agree to the IEP or they will be withdrawn from the scholarship program. Mrs. Stasek signed the IEP but did not waive her consent to fundamentally change N.S.'s placement and services (direct speech, direct OT, 300 hours of adult supports, social skills direct) in a regular education classroom to indirect services and no supports in a self-contained classroom.

record, while giving some deference to the fact findings of the administrative proceedings." *Knable v. Bexley City Sch. Dist.*, 238 F.3d 755, 764 (6th Cir. 2001), cert. denied, 531 U.S. 957 (2000).

While the district court should give the ALJ's findings "due weight," those findings are not conclusive. *Teague Indep. Sch. Dist. v. Todd L.,* 999 F.2d 127, 131 (5th Cir. 1993). The amount of weight due to administrative findings depends on whether the finding is based on educational expertise. *McLaughlin v. Holt Pub. Sch. Bd. Of Educ.*, 320 F.3d 663, 669 (6th Cir. 2003). "Less weight is due to an agency's determinations on matters for which educational expertise is not relevant because a federal court is just as well suited to evaluate the situation." *Id*.

Here, the Ohio Department of Education was the acting agency through the actions of IHO Taich and SLRO Mues, who do not have any educational expertise above and beyond what this Federal Court is capable of applying to this situation. There should be less weight given to the IHO and SLRO's decisions because educational expertise is not relevant to evaluate the matter with N.S.

## IV. LAW AND ARGUMENT

**1. The Strongsville City School District violated the procedural safeguards, 20 U.S.C. 1415, "parental rights under the IDEIA" which is a denial of FAPE.**

The Appellants are entitled to the protections and benefits of the procedural safeguards of the IDEIA as parents of a disabled student. The rights of the Appellants were violated by the Strongsville City School District. The Strongsville City School District simply ignored the IDEIA's stated purpose and role of a disabled child's parent which mandates that they are to be equally included as *informed* members of the IEP team and that they are included in all educational decisions for their disabled child N.S.

The Supreme Court clearly stated:

> The goals of IDEA include "ensur[ing] that all children with disabilities have available to them a free appropriate public education" and "ensur[ing] that the rights of children with disabilities and parents of such children are protected." 20 U.S.C. §1400(d)(1)(A)-(B) (2000 ed., Supp. IV). See generally §1412(a)(10), §1414, §1415. Although our discussion of these four areas does not identify all the illustrative provisions, we do take particular note of certain terms that mandate or otherwise describe parental involvement. IDEA requires school districts to develop an IEP for each child with a disability, see §1412(a)(4), 1414(d), with parents playing "a significant role" in this process, Schaffer v. Weast, 546 U.S. 49, 53 (2005). Parents serve as members of the team that develops the IEP. §1414(d)(1)(B). The "concerns" parents have "for enhancing the education of their child" must be considered by the team. §1414(d)(3)(A)(ii). IDEA accords parents additional protections that apply throughout the IEP process. See, e.g., §1414(d)(4)(A)(requiring the IEP Team to revise the IEP when appropriate to address certain information provided by the parents); § 1414(e) (requiring States to "ensure that the parents of [a child with a disability] are members of any group that makes decisions on the educational placement of their child"). The statute also sets up general procedural safeguards that protect the informed involvement of parents in the development of an education for their child. See, e.g., §1415(a) (requiring States to "establish and maintain procedures . . . to ensure that children with disabilities and their parents are guaranteed procedural safeguards with respect to the provision of a free appropriate public education"); §1415(b)(1) (mandating that States provide an opportunity for parents to examine all relevant records). See generally §1414, 1415. A central purpose of the parental protections is to facilitate the provision of a " 'free appropriate public education,' " § 1401(9), which must be made available to the child "in conformity with the [IEP]," §1401(9)(D).

*Winkelman v. Parma City Sch. Dist*., 550 U.S. 516, 523–524 (2007).

The IHO and the SLRO failed to properly find that the parents and the student were denied FAPE when the District unilaterally changed N.S.'s placement from general education to a glass doorway, when they were not kept informed of N.S.'s education, when they did not have meaningful input into the IEP, and when the progress reports and information regarding N.S. was not accurate during the 2009-10 school year. The parents of N.S. were not accorded the right to make any decisions for N.S. during the 2009-10 school year. Had the parents not filed a due process complaint they would have never learned that N.S. was not being educated in the general

education classroom without his peers.  This information was first learned through the testimony at the due process hearing.  The report card and progress reports all indicated the IEP was being implemented as written. (PCB 25-26).  The actions of the Strongsville City School District with regards to the procedures not followed and the substantive violations with the implementation of the 2009-10 IEP clearly denied N.S. and his parents FAPE.

The same denial of FAPE occurred for the 2011-12 school year when the District unilaterally changed N.S.'s placement, when the parents did not have meaningful input into the IEP because they were not kept informed.  (PCB 53, PAB 17)  The IHO and SLRO did not require Strongsville to adhere to the mandates of the IDEIA, hence not finding a denial of FAPE.

**2.  The Administrative Record clearly shows that N.S.'s 2009-10 IEP was not appropriate as written to provide an educational benefit.**

A FAPE "consists of educational instruction specially designed to meet the unique needs of the handicapped child, supported by such services as are necessary to permit the child 'to benefit' from the instruction." *Bd. of Educ. of the Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 188–89 (1982). N.S. did not receive FAPE for the 2009-2010 school year because his IEP as developed on June 2, 2009 was not appropriate.  N.S.'s June 2, 2009 IEP clearly did not address his unique needs in the areas of speech and language, social skills, occupational therapy, specially designed instruction, and behavior, which resulted in his failure to achieve meaningful educational benefit during the 2009-2010 school year.

**A. Occupational Therapy**

The 2009-10 IEP was not appropriate for N.S. as it did not incorporate any fine motor goals and objectives to address N.S.'s difficulties with fine motor skills.  There was data from N.S.'s private provider that demonstrated N.S. had deficits in fine motor activities and he was

receiving private direct occupational therapy services to address fine motor.  (Tr. 616).  When N.S. was presented with challenging tasks such as handwriting, he would tantrum and have melt-downs.  N.S. was removed from the regular education classroom on a consistent basis because of melt-downs due to writing.  (Tr. 2064).  Mrs. Ryba testified that she provided data to Mrs. Stasek that supported N.S.'s progress made in the area of fine motor activities that she "incorporated" into the sessions, but no data exists. (Tr. 600).   N.S. continued to be "set off" during the entire 2009-10 school year with fine motor activities.

Moreover, the present levels do not provide any evidence that N.S. became "frustrated" because writing or fine motor activities were difficult.  No specially designed method for building fine motor skills was discussed or offered.

## B. Speech Language

The results of the recent speech assessment showed that N.S. is below average with receptive and expressive language. (Ex. 34, p.178) He had difficulty with understanding compound and complex sentences, comparatives opposites, and prepositions. He demonstrated difficulty with answering who, why and how questions, using complete sentences, being able to tell about an object, or place and naming categories and opposites.   There were notable articulation errors but these errors were determined to be developmental in nature, in other words, the recommendation was to "wait and see."  (Ex. 34, p. 178, Tr. 1054, 1103). This is simply inappropriate – N.S.' articulation issues should have been addressed. (PCB 21-22).

## C. Specially Designed Instruction

The District realized that N.S. required one-to-one instruction but failed to offer this on the IEP.   The Strongsville staff testified that they were providing one-to-one instruction in the glass doorway, which was not indicated on the IEP.  The general education teacher did not oversee his

program in the glass doorway nor did she consult with the intervention teacher to ensure the program was appropriate. It is unclear in the record as to why N.S. was not offered one-to-one on his IEP and why N.S. was placed in a glass doorway and not a classroom.

**D. Behavior**

N.S.' June 2, 2009 IEP was inappropriate due to its failure to properly address N.S.' behaviors that interfered with his access to the curriculum and resulted in his failure to achieve meaningful educational benefit for the 2009-2010 school year. The IEP team has an obligation to revise the IEP to address: (a) Any lack of expected progress toward the annual goals described in paragraph (H)(1)(c) of this rule, and in the general education curriculum, if appropriate; [and] (b) Consideration of special factors: In conducting a review of the child's IEP, the IEP team must consider the special factors described in paragraph (L)(1)(b) of this rule. It is a denial of FAPE when a District fails to respond either quickly or effectively. *Covington v. Yuba City Unified School Dist.*, 780 F. Supp. 2d 1014 - Dist. Court, ED California 2011.

As discussed in detail in Plaintiff's Administrative Post-Hearing Brief and Appellate Brief to the State Level Review Officer, N.S. exhibited severe behavioral issues during the 2009-2010 school year that significantly interfered with his access to education. The District was very aware of the potential for N.S. to have interfering behaviors because he had exhibit them on a smaller scale during the 2008-2009 school year. Rather than approaching N.S.' June 2, 2010 IEP to proactively address behavior by providing the appropriate supports, the District waited until it was forced to act reactively. In November 2009, the IEP team amended N.S' IEP to include a behavioral goal. (Ex. 46). By the time this amendment was developed and implemented, N.S. was already on a downward spiral in the general education classroom and was housed in the glasshouse for his education. N.S.' behaviors continued to escalate and increase in frequency and

duration. Nothing was done by the District until a functional behavioral assessment was conducted during the last two weeks in April and resulted in an IEP amendment to the accommodations section. Testimony from several IEP team members identified that nothing in the May 7, 2010 IEP amendment was different than what had been failing all year.  There was no meaningful attempt by the IEP team to address N.S.' escalating behaviors at all during the 2009-2010 school year. His behaviors interfered with his access to his education and resulted in a denial of FAPE.

Furthermore, the District did not implement an appropriate positive reinforcement system to address N.S.' behaviors.  While there was some testimony that N.S. was able to earn a preferred activity, there was no testimony that it was consistent enough to lead to any results. N.S. really enjoyed the computer.  The computer was used as a preferred activity for a reward. However, N.S. was also given presented with time on the computer when he would begin to act out in an attempt to prevent the behaviors from escalating to the point that N.S. required removal from the classroom.  (Tr. 262-263). Mrs. Sunkle testified that she utilized the computer as a calming thing, a sensory break, or a break from challenging tasks such as music class and also as a reward for good behavior. (T. 262, 269-270; 465).  Other times, N.S. could just request to have a break on the computer. (Tr. 268).  There was no set system in place to work with N.S. on his behaviors.

**E. IEP Goals and Objectives**

IEP Goals 1, 2, 3, 4, 5, 6, 7, and goal 8 were not able to be implemented as written on the IEP because the supports and services listed on the IEP were not appropriate and did provide any benefit to N.S.   The Strongsville staff all testified about how they adjusted and altered how they delivered the IEP services, method of instruction, the amount of time and location of services,

provided instruction to N.S. without his peers, modified the work, provided supports and services/worked on goals there were not indicated on the IEP.  (PCB 16-24).

The testimony supports that the Appellants met their burden of proof that the IEP was not appropriate the way it was written and that is why the staff was not able to implement the IEP. Instead of revising the IEP so that it could be implemented appropriately, the District made many unilateral changes.

**3**.   **The preponderance of evidence shows that the Strongsville City School District unilaterally changed N.S.'s 2009-10 placement, which denied him FAPE.**

The preponderance of the evidence demonstrates that the 2009-10 IEP was not implemented as written in the general education classroom instead it was implemented in a glass hallway without typical peers.  Therefore, the IEP could not provide FAPE as required by the IDEA.  See 20 U.S.C. § 1412; *Burilovich*, 208 F.3d at 565. To provide a FAPE, a school district must offer an individualized program of special education, designed to meet the student's unique needs, that is provided in accordance with a properly developed IEP.  *Rowley*, 458 U.S. 176; *Knable*, 238 F.3d at 762.

With N.S., the IHO and SLRO abused their discretion when making a wrongful determination that Strongsville did not change N.S.'s placement by moving him from the general education to a glass doorway for the 2009-10 school year.

N.S.'s IEP was specific to what he was to receive, when he was to receive his services, how he was to receive the services/supports, and where he was to be receiving his special education—the general education classroom.  The administrative record clearly supports the fact that N.S.'s 2009-10 IEP was not implemented in the general education classroom because Strongsville unilaterally changed his placement, which denied N.S. FAPE.

**4. The IHO and SLRO failed to strictly adhere to reviewing the IEP documents that were offered to the parent when making their final determination regarding FAPE.**

An IEP must be reviewed precisely in accordance within the "four corners" of the document so that the achievement of progress can be accurately measured and reported. When a parent challenges the appropriateness of an IEP the reviewing officer examines the IEP itself to determine whether the document meets the required mandates of the IDEIA.

The "four corners" rule has been endorsed by various circuits. See, e.g., *A.K. v. Alexandria City School Bd.,* 484 F.3d 672, 681–82 (4th Cir. 2007) cert. denied 128 S.Ct. 1123 (2008) ("In evaluating whether a school district offered a FAPE, a court generally must limit its consideration to the terms of the IEP itself"); *County School Bd. of Henrico County, Virginia v. Z.P.,* 399 F.3d 298, 306 n. 5 (4th Cir. 2005) These "are requirements by which the adequacy of an IEP is to be judged[.]" *Cleveland Heights-University Heights City School Dist. v. Boss,* 144 F.3d 391, 398 (6th Cir. 1998). *Cleveland Heights,* 144 F.3d at 398; see also *Knable ex rel. Knable v. Bexley City Sch. Dist.,* 238 F.3d 755, 768 (6th Cir. 2001) (cautioning that when reviewing the adequacy of the services offered under an IEP, "we must limit our evaluation of [the school district's] proposed IEP to the terms of the document itself, as presented in writing to the [parents]"). Indeed, in *Knable,* the Sixth Circuit stated that: [t]he district court should have limited its assessment to the terms of the draft IEP document itself.

The Second Circuit Court of Appeals issued a decision in *R.E v. New York City Dept. of Educ., 694 F.3d 167, 175* (2d Cir. 2012) which held: "courts must evaluate the adequacy of an IEP prospectively as of the time of the parents' placement decision and may not consider 'retrospective' testimony regarding services not listed in the IEP."

An IEP must be implemented precisely in accordance with its written terms so that the achievement of progress/educational benefit can be accurately measured and reported. To

implement certain terms and not others, changes the intent of the IEP and skews measured progress.

The IHO and SLRO wrongfully relied upon the self-serving "retrospective" testimony of the Strongsville witnesses and not the IEP document itself in determining whether the IEP was reasonably calculated to allow for meaningful educational benefit.

**A. Applying the "Four Corners" rule to the 2009-10 IEP leads to the conclusion that it was not reasonably calculated for N.S. to achieve meaningful educational benefit**

The District did not implement N.S.' June 2, 2009 IEP as it is written. Rather, the District changed service settings, added prompts to skills, modified work, which lead to inaccurate progress reporting and ultimately, denied N.S. a free and appropriate education because he failed to achieve any meaningful educational benefit on the IEP as it was written.[4]

Failure to implement the IEP as it was written, or portions of the IEP amounts to a denial of FAPE. *Sumter County Sch. Dist. 17 v. Heffernan*, 56 IDELR 186 (4th Cir. 2011) (emphasis added); *A.P. v. Woodstock Bd. of Educ.*, 55 IDELR 61 (2d Cir. 2010); *Van Duyn v. Baker Sch. Dist. 5J*, 47 IDELR 182 (9th Cir. 2007), *reprinted as amended*, 107 LRP 51958 (9th Cir. 08/06/07); *Houston Indep. Sch. Dist. v. Bobby R.*, 31 IDELR 185 (5th Cir. 2000), *cert. denied*, 111 LRP 30885 , 531 U.S. 817 (2000); and *Neosho R-V Sch. Dist. v. Clark*, 38 IDELR 61 (8th Cir. 2003).

In *Turner v District of Columbia*, the court found that a plaintiff does not have to establish that the implementation failure resulted in harm.  "Because of the significant difference between the proportion of special education in the general education context mandated and that which was actually received ... the Hearing Officer was incorrect in her finding that [the student] was not denied a FAPE," *Turner v. District of Columbia,* 61 IDELR 126.   The IHO and SLRO in

---

[4] A more detailed analysis of the failure of the District to implement the IEP as it was written is contained in PCB

N.S.'s case failed to identify that the special education that N.S. received in the glasshouse was significantly different than what the IEP provided. (PCB 8-14, PAB 6-15).

Specifically, Goal 1 specified instruction delivered in the general education setting and to allow for reinforcement by the general education teacher. Because N.S. was constantly being removed from the general education classroom for handwriting, there were no opportunities for N.S. to generalize his handwriting skills in the general education classroom or the general education curriculum. Goal 2 also provides instruction in the general education classroom, yet was delivered in the occupational therapy room without peer models as reported by Ms. Ruppe. (Tr. 2116). Further, Goal 2 requires N.S. to master the skill independently with the assistance of verbal and visual prompts. But the communication log and the subsequent IEP identify that N.S. requires physical prompts. Although the IEP Progress Reports indicate that N.S. made adequate progress on Goal 2, it is not accurate – N.S. cannot be independent if he is requiring physical prompts.

Mrs. Lewis testified that she provided N.S. speech in a small group as indicated on the IEP to address Goals 3 and 4, but everyone that saw her in the general education classroom testified that Mrs. Lewis worked with the whole class of 28 students.   (Tr. 101, Tr. 236, Ex. A P0030, P0048). [5]  In analyzing Goal 3, N.S. was not able to use the skill according to the present levels reported in the 2010-2011 IEP as reported on May 28, 2010, but the skill was reported as mastered by June 10, 2010.  As testified by the speech language pathologist, the data maintained for some of the objectives/benchmarks for Goal 3 was not specific nor accurate, it would appear that the data for reporting N.S.' ability to answer 'who' questions in complete sentences was also not specific or accurate and led to a misleading progress report.

---

[5] Retrospective testimony changing the 2009-10 IEP addressed in PAB 13

IEP Goal 4 also specified a skill to be worked on in the general education setting with peers during unstructured time. This goal was reported as mastered yet there was no testimony, data or evidence that N.S. was able to play cooperatively with peers for 5 minutes, that he even had access to working with peers in unstructured time, or could answer peers with complete sentences. (Tr. 2446; 2450, 2451; Ex 130).

Utilizing the "four corners" rule, Goal 5 is clearly not calculated for meaningful educational benefit as it is not even a measurable goal. The present level does not provide a baseline for how many pictures N.S. can sequence nor does it provide a baseline for the word prompts. There is no way to measure progress if the present level does not provide a starting point to begin measuring. There is no data reflecting whether it was mastered using all the word prompts indicated on the IEP. The progress reports state that N.S. mastered Goal 5, yet it is obvious that Goal 5 was never properly implemented.

Goal 6 is clearly incomplete and not able to be implemented. There is nothing in the IEP addressing whether N.S. would receive any specialized instruction for this Goal, who would be providing any instruction, where he would be provided instruction, who would be collecting and reporting data. There is no way to know whether N.S. achieved any meaningful educational benefit from this goal as it was never implemented – it couldn't be implemented because the IEP gave no direction on proper implementation.

Lastly, with respect to Goal 7, it was the only goal that appears to have been accurately reported on the progress report as "Neil's behaviors and absences from school have impacted his progress." (Ex. 130) While this was only notated that comment in Goal 7's Progress Report, Ms. Baraga testified that it should have been across all areas. (Tr. 2097-98). Additionally, she notated the impact of his behaviors on the January 22, 2010 interim reporting period, but she

testified that it should have been on the February 19, 2010 reporting period as well because N.S.' behaviors did not get better. Moreover, Mrs. Baraga indicated that the marking of progress as exceptional was a clerical error. Baraga Tr. 2099  She also testified that she was not sure why she reported progress as being adequate when it was really only minimal. *Id.*

This is what was occurring with the entire IEP Progress Report – misleading and inaccurate reporting of progress. It is clear that the June 2, 2009 IEP as implemented during the 2009-2010 school year was inappropriately written and never properly implemented. Special education staff members and aides were too busy trying to react to N.S.' behavior that no one took the time to manage the appropriate development and implementation of his IEP.  Due to the failure to properly implement the IEP, the corresponding progress reports were misleading and inaccurate.

Allowing individual school district employees to testify as to other services, not listed on the IEP, to supplement the "offer" unfairly shifts the goalposts and permits the school district to bait a parent into a unilateral placement with a parsimonious IEP, then fight off reimbursement by testifying as to the generous services it later claims *would* hav*e* been offered. Such a rule would essentially gut the holding of *Burlington,* and clearly runs counter to the intent of Congress in codifying that holding in the current reauthorization of IDEA. See 20 U.S.C. § 1412(a)(10)(c)(ii).

The 2009-2010 IEP was not reasonably calculated to allow N.S. to achieve meaningful educational benefit and due to the failure to properly implement it, N.S. was denied FAPE for the 2009-2010 school year. The District cannot utilize retrospective testimony to explain how the IEP was implemented if it was implemented differently than how it was written – this would

create a moving target for Parents to know what special education is being proposed for their child. (PAB 12).

**B. Applying the "Four Corners" rule to the 2011-12 IEP leads to the conclusion that it was not reasonably calculated for N.S. to achieve meaningful educational benefit**

The April 2011 IEP did not address N.S.'s deficits in behaviors and academics as required by the Ohio Department of Education (ODE). The majority of the goals relate to N.S.'s behaviors. (Tr. 2250) The IEP was based on data that might not have been relevant to N.S. The data relied upon in the 2011 ETR was from N.S.' attendance at STEPS and early year reporting from BIIO. (Tr. 2250, Ex. 39) Updated data or information was requested from BIIO to aid in writing an appropriate IEP, but Ms. Britt testified that she wasn't interested in what academically N.S. had done at STEPS or BIIO when writing the 2011-12 IEP. (Tr. 1335, 2295). The IEP goals did not provide N.S. with the ability to access the general education curriculum. The IEP is not written following the ODE guidelines which require all IEP's be written as "standards based IEP's". Ms. Britt justified this failure on behalf of the District when she said that "there is no state standards on behavior and the team had prioritized Behavior." (Tr. 1335). Further, Ms. Lewis testified in a subsequent due process hearing that she was aware that between March 2011 and January 26, 2012, N.S. did not make any progress in the area of speech and language. (SE2715-2012 Tr. 1942-43).

IHO Taich failed to find Strongsville in violation for not offering standards based IEP and for not timely revising N.S.'s 2011-12 IEP, which was written to provide no academic standards and no curriculum instruction.[6] IHO Taich simply relied upon the retrospective testimony when determining what was offered to N.S.

---

[6] The District revised the 2011-12 IEP in October 2011, after several IEP meetings, and again failed to comply with the ODE standards based IEP requirement. The District met with the parent on multiple occasions where they could have revised the IEP to be in compliance of the Ohio Department of Education standards.

IHO Taich obviously did not understand the Ohio Department of Education's requirement for a standards based IEP. This was demonstrated by IHO Taich's lack of any discussion relating to the requirement (whether the district met the requirement or violated the requirement) and clearly erred when determining that the 2011-12 IEP was appropriate in prioritizing behaviors without addressing academics.

The IHO and SLRO did not adhere to evaluating N.S.' 2009-10 and 2011-12 IEP's as they were written. The IHO allowed retrospective testimony by the District staff regarding IEP changes to the least restrictive environment, service settings, supports, delivery of services, amount of time providing services, added prompts to skills, modified work, which led to revising the document's through testimony at the due process hearing. This retrospective testimony differs from what was written on the IEP's and fundamentally changes the IEPs being challenged by the parent. The SLRO failed to independently review the IEPs as they were written to determine whether they were reasonably calculated to allow meaningful educational benefit.

## V. CONCLUSION

It is clear that the preponderance of the evidence supports Plaintiff's contentions that N.S. was denied FAPE for the 2009-2010 and 2011-2012 school years.

Respectfully submitted,


/s/Michelle K. McGuire_____
Michelle K. McGuire 0076553
PO Box 81804
Cleveland, Ohio 44181
(440) 396-7844
Michelle.attorney@gmail.com
Attorney for Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Memorandum in Opposition was sent by this Court's electronic system on the 18th day of November, 2013.


TO:

Mr. Scott Peters
Britton, Smith, Peters & Kalail Co., L.P.A.
3 SUMMIT PARK DRIVE
SUITE 400
CLEVELAND, OHIO 44131-2582


/s/Michelle K. McGuire____
Michelle K. McGuire, Esq.